## Carmen Fonseca v. The State.

### No. 3240.   Decided March 8, 1905.

**1.—Murder in the Second Degree—Confessions.**

Where the officer who arrested defendant told her that she was under arrest for assault with intent to murder and that anything she said could be used against her, and thereupon she said that deceased had refused to give her some beer and that she did what she did because she did not want to be made a laughing stock; having first inquired of the officer how deceased, who was then still alive, was, the same was admissible in evidence as a confession.

**2.—Same—Evidence—Res Gestae.**

Where the State's witness a few minutes before the homicide had seen defendant and deceased together in a place of amusement and heard the defendant ask deceased to buy some beer, which the latter refused to do, and shortly thereafter saw defendant with a knife which witness identified and a minute after that saw deceased, who dropped to the ground and said that defendant, calling her by the name by which she was known, had cut him, the same was admissible as res gestae.

**3.—Same—Harmless Error.**

Where the question to which defendant objected was answered favorably to her, the error, if any, was harmless.

**4.—Same—Argument of Counsel.**

Where the court's explanation to the bill of exceptions to the State counsel's argument showed that it was legitimate, there was no error.

**5.—Same—Disqualification of Juror.**

Where the question of disqualification of a juror was submitted by affidavits pro and con to the court, who passed thereon and decided the issue against the defendant, and the evidence amply warrants the conclusion reached by the trial court, the same will not be reversed.

Appeal from the District Court of El Paso.    Tried below before Hon. J. R. Harper.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of murder in the second degree, and her punishment assessed at confinement in the penitentiary for a term of twenty-five years.

The first bill of exceptions complains of the admission of the con-

fession made to R. E. Bryant, deputy sheriff, by appellant while under arrest. Wiitness Bryant testified that he told appellant she was under arrest for assault with intent to murder, and anything she said could be used against her. Appellant objected to said confession on the ground, that no sufficient predicate or basis had been laid for its introduction. The bill of exceptions discloses that witness told appellant she was under arrest for assault with intent to murder. Thereupon appellant asked witness, how deceased was; witness read the warrant to her, and then gave her the warning above stated. Thereupon appellant asked witness how deceased was. "I told her I did not know how he was." The record shows that at this time deceased was not dead. She then went on and said that she had asked deceased for some beer. He refused to give it to her and she did what she did because she did not want to be made a laughing stock of. The warning given was the statutory warning, and the confession shows that appellant's statement was a direct confession to the commission of the homicide. While it is true that deceased was not dead at the time she made this statement, yet said confession shows she did stab deceased, from which wound he subsequently died. Appellant asked the court to charge the jury not to consider said confession, as shown by said bill, which was refused. In this there was no error.

By another bill it appears that appellant objected to the following testimony of Ike Blum: "That on the night of the 15th of August last, I was at the Favorite Theatre. I saw defendant there; also saw deceased, Alexander Mitchell. On that night I saw defendant and deceased talking together. I was nearly against him at the time. William Mc-Illvaine was standing right in the immediate vicinity. Defendant asked Alexander Mitchell to buy some beer. He refused to do so. I walked away immediately after that. That is all the conversation I heard between them. I then went off about five feet. I did not see anything else that transpired between them. I saw this woman, the defendant, have a knife. I can identify the knife. It had a black handle. I would take the blade to be about two inches long. I think that is the knife. I am positive that is the knife. I next saw defendant as I was going out of the hall. She was coming in and I was going out. I heard her ask defendant to buy her some beer. He refused, and I then turned away. The next time I saw her she was coming into the building as we were going out. I met deceased at the corner of Salvini's, just as he dropped. He was on the outside. It was not more than five minutes after I heard the defendant ask Mitchell to buy some beer that I met her coming into the hall; and it was not more than one minute after I passed defendant at the door when she was coming in and I was going out, until I saw Mitchell. When I got up to Mitchell I asked him what was the matter, and he said 'Whetta cut me,' and with that he fell. He said no more." Appellant objected to all this testimony on the ground that the same was not res gestæ of the transaction. Said witness furthermore testified that defendant was called "Whetta,"

which was a term applied to a girl of light complexion; and that he (witness) knew to whom deceased referred when he used the word "Whetta." This testimony was clearly admissible.

Bill number 3 shows that after the appellant had testified in her own behalf, and had not been questioned as to her arrest; State's counsel on cross-examination asked appellant: "When you were going up the street with the policeman, Juan Alderete, did some one on the street ask you what they had arrested you for, and did you not answer, 'For stabbing a cabron?' To which question defendant's counsel objected, for the reason as appeared from the question defendant was under arrest and nothing in reference to said transaction had been inquired into on direct examination; and that the question was calculated to prejudice the jury against defendant; and that no predicate had been laid. To which question, appellant answered, "I do not remember that I said I was arrested for stabbing a cabron, as I was drunk." The answer of the defendant being in the negative it could not have injured her.

Appellant makes various objections to the argument of J. M. Dean, a private prosecutor employed to assist the district attorney. But the explanation of the court to the bill of exceptions shows that the argument was legitimate.

Bill of exceptions number 8 insists that the court erred in not giving appellant a new trial on the ground that the juror James F. Holgate was disqualified. This matter was submitted by counter affidavits pro and con, to the trial court. The juror controverted appellant's insistence as to his disqualification, and denied in toto the statements imputed to him, which we deem unnecessary to copy, as the same is long and tedious. Hwoever this matter was submitted to the court; he has passed upon and decided the issue against appellant. We think the evidence amply warrants the conclusion reached by the trial court.

The charge of the court is correct. The evidence supports the verdict of the jury. The judgment is affirmed.

*Affirmed.*

Henderson, Judge, absent.